## SHILLITANI v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 128.

**Customs duties ⬉⟩134—Conviction for concealing smuggled goods held not sustained by the evidence.**

A judgment of conviction of a defendant under Rev. St. § 3082 (Comp. St. § 5785), for knowingly receiving and concealing goods imported contrary to law, *held* not sustained, where there was no evidence whatever that the goods in question were imported contrary to law.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against John Shillitani. Judgment of conviction, on an indictment charging violation of Rev. St. § 3082 (Comp. St. § 5785), and Tariff Act Oct. 3, 1913, § 3, par. 8 (Comp. St. § 5524), and defendant brings error. Reversed.

Elijah N. Zoline, Leonard A. Snitkin, and Abraham Goodman, all of New York City, for plaintiff in error.

William Hayward, U. S. Atty., and John M. Ryan, Sp. Asst. U. S. Atty., both of New York City.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. Defendant was indicted upon two counts. The first count charged that between September 11, 1920, and October 28, 1920, defendant "unlawfully * * * did receive and conceal * * * some 66 dozen pairs of kid gloves after importation thereof from a foreign country, knowing the same to have been imported contrary to law," and "knowing that said merchandise had been introduced into said commerce of the United States by the willful act of a person described as an oiler or mechanic on a steamship. * * * The second count alleged that between the same dates the defendant "unlawfully * * * facilitated the transportation and concealment" of the same gloves after importation, and with knowledge that they had been imported contrary to law.

The sole question which we consider necessary to discuss is whether there was any evidence that the gloves had been "smuggled" into the United States. The importer of the gloves was a business house known

as Syndicate Trading Company. This concern imported gloves of a particular design from a manufacturer in France. These goods, with others, arrived at dock in New York City on the steamship Adriatic. There were three cases, as accounted for on the manifest of the Adriatic, viz. No. 9332, gloves; No. 9327, sacs; No. 9329, artificial flowers. A proper customs entry was made by Syndicate Trading Company of these three cases of goods, but so far as the testimony discloses there was no examination of the contents of these cases on September 11th, the date of their arrival on the Adriatic. By some official procedure, cases 9327 and 9329 were delivered to the place of business of Syndicate Trading Company at No. 2 Walker street, New York City. The record is not clear as to the procedure with reference to case No. 9332, nor as to the time and place where the contents of that case were examined, but it would seem that this case was also examined at No. 2 Walker street. The invoice, which set forth the contents of the cases in detail, showed that there were gloves in 9327 and 9329, but not in 9332.

On October 6, 1920, an examiner from the United States appraiser's office examined the goods at No. 2 Walker street for purposes of appraisal. He found shortages of gloves in cases 9327 and 9329. He also appraised what is referred to as Government's Exhibit 1 (presumably the contents of case No. 9332) and found some gloves in that case. It thus appears that nearly a month elapsed (September 11th to October 6th) between the time these cases of merchandise arrived at the port of New York and the time they were examined. The record does not enlighten us as to what was done with these cases after arrival, how long they remained on the dock or elsewhere and when they were delivered to Syndicate Trading Company, at No. 2 Walker street.

Dietrich, the manager of the importing department of Syndicate Trading Company testified that "the first time" he saw the stolen goods "was in a package in the custom house, the public stores," but when "the first time" was does not appear. That the goods were stolen is clearly shown by the record, but there is not a scintilla of evidence to indicate that the goods were stolen prior to the customary entry made by Syndicate Trading Company and referred to supra.

The government's case was made up largely of testimony as to statements made by defendant, and when the District Court at the close of the government's case, refused to grant the motion to dismiss the indictment, defendant took the stand and told a story which was substantially the same as the statements testified to by the government's witnesses.

One Levy, who was a manufacturer of ladies' waists, testified that defendant came to his place of business some time in October and said, "I have got some gloves, I have now, a friend of mine has brought over from the other side." About two days later, defendant brought samples of these gloves to Levy. There was further talk, not necessary to detail. Then Levy became suspicious, and telephoned to a police officer, named Callahan, whom he knew. This was about October 20th. Callahan had a conversation with defendant, and the latter stated that "he got them [the gloves] from a man who travels back and

forth on the ships." Thereupon Callahan arrested defendant, charging him with grand larceny. Upon cross-examination, Callahan testified that there was no question between him and defendant "at that time whether the duty was paid."

Hooks, a detective, testified that defendant stated to Callahan and himself that "he got these gloves from a man who works on steamships, an oiler, or something of that kind—a helper on one of the ships that crosses over from New York to England." In due course, defendant was arraigned in a magistrate's court, but was immediately released, with the understanding the the government agent had a warrant for him, and thereupon he was arrested under that warrant.

Watsky, a clerk of the Treasury Department attached to the special agent's office at New York, investigated the disappearance of the consignment of goods. He was not asked, nor did he testify, when and whence the consignment disappeared. Defendant was arraigned before the United States commissioner on November 11, 1920, and, after leaving the commissioner's office, he stated, according to Watsky, "that he was entirely innocent of this transaction, that he obtained the gloves from a man that works on the ships, an oiler or a seaman; that this man travels back and forth from France," and that the man bought the gloves in France, and brought them here for profit; that the gloves were delivered to him in the neighborhood of Chelsea piers.

Defendant's story on the witness stand was a composite of his statements made as above referred to, and was substantially the same, with some unimportant differences as to detail. It will be noted that in the so-called admissions of defendant nothing was said, in substance or effect, as to the goods having been smuggled, or as to any knowledge that duty thereon had not been paid nor can any inference to that effect be drawn from the conversations testified to. All that these conversations amounted to was an effort by defendant to explain how he came into possession of the stolen goods and an assertion of his innocence in that regard. He said nothing whatever which can conceivably be construed as stating that some one on the ship had broken into these cases and extricated therefrom the stolen goods prior to the arrival of the Adriatic, or prior to the due entry of the contents of the cases, including, among other things, these stolen goods.

The case is an illustration of a tendency, which has been noticed, of resorting to the United States courts for the prosecution of offenses solely cognizable in the state courts. If there were legal difficulties in prosecuting this defendant successfully for participating in one form or another in a plain theft, that fact affords no excuse for imposing additional burdens upon a District Court already sufficiently busy in the disposition of cases properly within its jurisdiction.

There was no evidence whatever to sustain either of the counts of the indictment, no showing that the goods had been introduced into the United States contrary to law, and consequently no showing that defendant had any knowledge of unlawful importation or failure to pay duty.

Judgment reversed.